All right. Now we'll hear the case of Mr. Geisel Zapata-Matute v. U.S. Attorney General. Good morning. Good morning. Thank you, Judge Martin, and may it please the Court. My name is Mark Gretzmacher, and I represent the petitioner, Mr. Geisel Zapata-Matute. This case falls squarely within this Court's well-established precedent that when an immigration judge fails to consider critical material evidence and to make adequate findings, that decision must be revisited. It is undisputed that gangs repeatedly threatened to kill Mr. Zapata-Matute's entire family. It is undisputed that Mr. Zapata-Matute's uncles slept outside of his house with guns in order to protect him. It is undisputed that gangs later carried out those threats by murdering Mr. Zapata-Matute's uncle in public and by independently threatening and shooting one of his cousins. And it is undisputed that Mr. Zapata-Matute traveled over 1,600 miles at the age of 14 to flee these threats. In the words of his grandmother, Mr. Zapata-Matute's life is in danger should he return to Honduras because he has been threatened with death. Despite this uncontested evidence, the immigration judge held that Mr. Zapata-Matute had never been threatened, that there is no evidence or any reason to believe his life is under threat, and that he therefore falls within the general class of young Hondurans whose values are opposed to that of gang members. Those conclusions cannot be reconciled with the facts of this case or the law of the circuit. This court should therefore grant Mr. Zapata-Matute's petition and vacate the decisions of the immigration judge and Board of Immigration Appeals for at least three reasons. First, neither agency provided reasoned consideration or made adequate findings consistent with this court's well-established body of law requiring that they do so. Indeed, the record suggests that neither agency considered perhaps the most critical piece of evidence in Mr. Zapata-Matute's I-995 application, the affidavit submitted by his grandmother, which declared in no uncertain terms that his life was threatened with death should he return to Honduras. That piece of evidence was a sworn affidavit submitted after his uncle had been murdered, and that piece of evidence, along with many others, directly contradicted the immigration judge's conclusion that Mr. Zapata-Matute had never been threatened and that there's no evidence or any reason to believe he continues to be threatened. Can I ask you a question? Let me just say, I mean, I think this case is a very troubling one, but I think before we can get to these kinds of issues, we have to determine whether the Board erred in finding that Mr. Zapata-Matute was not a member of a particular social group for purposes of the analysis. And it looks to me like the particular social group that you have described in your brief before us is different from the one that has previously been described. And so I wonder whether we have jurisdiction over this. And if we do not have jurisdiction over this, or first you can answer my first question, then my question would be, if we find that we do not have jurisdiction over this case, then would the proper thing to do be to dismiss it for lack of jurisdiction, and then Mr. Zapata-Matute would have the opportunity to file a motion to reopen or something of that nature with new evidence supporting this new particular social group? Thank you, Judge Rosenbaum. I think this Court does have jurisdiction for a couple reasons. One, while I can see this Court may not have jurisdiction to consider his newly proposed particular social group in the first instance, I think this Court does have jurisdiction in line with precedents like Tan, Kazimzada, Nesrich, Ville, and others to recognize that where there are fundamental failures in the analyses below, due to a failure to consider critical evidence and to make adequate findings, this Court should remain for further proceedings, because we are unable to review that decision. Can I, I don't know if you were finished answering Judge Rosenbaum's question, but I'm just following up on that, in particular with regard to the Convention Against Torture claim. It seemed to me, as I understand that, you know, abuse or torture claims under CAT are not limited to actions taken by the government, but we're charged with looking broader than that. And it appeared to me that the IJ only spoke to torture from the source of the government. And so, it seemed to me that the IJ failed to give reasoned consideration to what the IJ was doing beyond government action. Is it, am I right about that, or? I think you are right about that, Judge Martin. I think that the country reports and other evidence submitted on Mr. Zapata-Matute's behalf, in addition to his personal story, reflect the fact that it is more, it is very likely that should he return, he will be persecuted by gangs, and that gangs have incredible influence on Honduras to the extent to which the government has essentially acquiesced in its policing powers to the gangs. And if that answers your question, I'd like to just return to Judge Rosenbaum's, because I think that jurisdiction is an important issue here. I think I would, again, appoint the Court to decisions finding a failure to give reasoned consideration. In those decisions, I think below, oftentimes, the, there were different arguments presented to the Board of Immigration Appeals and to the Court, and to the Eleventh Circuit, yet I think the Court found that a failure to give reasoned consideration is a threshold issue, implicates the decisions of both the Board of Immigration Appeals and the immigration judge, and therefore, this Court has jurisdiction to consider whether or not, in the first instance, they should review the analyses below, based on whether those analyses were fundamentally complete, as this Court has called it. I think, second, the core issue was raised before the BIA below, and that issue was whether or not the immigration judge rendered, quote, offered a complete and vivid assessment of the harms alleged by this child respondent. So, I would propose that this Court has jurisdiction to review this case, both in the reasoned consideration arguments and also in the substantial evidence arguments, as they go to his asylum claims, withholding of removal claims, and his cat claims. I think that the record clearly shows that there was a failure of reasoned consideration here. I think the failure to mention the grandmother's affidavit is critical. While this Court has recognized that an immigration judge need not discuss every piece of evidence, where an immigration judge fails to discuss or in any way explain a piece of evidence which contradicts his core conclusions, then I think that that commands the conclusion that evidence was not considered or, in the words of Anjurwadi, did not enter his calculus whatsoever. I think that's fairly evident here, both on with respect to the grandmother's affidavit and with respect to the other evidence submitted on behalf of Mr. Zapata-Matute's application. So just to make sure I'm understanding your argument, you do not believe that whether he was a member of a particular social group is a threshold issue? I think it ultimately is a threshold issue as to whether he has a successful asylum claim. I think here the main issue is whether the decisions of the immigration judge and the failure to do so pervade the analysis below, including the particular social group offered initially by the immigration judge and considered by the Board of Immigration's appeals. I think for those reasons, that particular social group needs to be reconsidered when this — if this case is vacated and remanded to those courts. Thank you. But I'm happy to clarify, because I — you know, if you have further questions in that area, you can address them. Well, I'm just trying to figure out how it could be — how it could be the situation that we could send it back without getting to the particular social group issue. I think this Court has established a fairly clear procedural rule in cases like Tan and Mestrizvilli that say that when there are certain fundamental flaws in the analyses below and the treatment of the evidence below, that this Court — again, this is from Mestrizvilli quoting Tan — quote, should remand for further proceedings because we are unable to review the decision. I think that's the case here. The — again, the unreasonable reasons for the immigration judge's findings, as Tan put it, and the failure to consider critical evidence, they sort of corrupt the analysis from the very beginning of this particular social group. I think that's evident in the exchange between Mr. Zapata-Matute's counsel at the immigration hearing and the immigration judge, where the immigration judge kind of throws up a particular social group, which he's basically already dismissed because he's already agreed with the government that Mr. Zapata-Matute was not abandoned, and just broadly groups him into the — a class of young people whose, you know, personal and religious values are at odds with those of the gangs. That's not what this case is about. I think for similar reasons, those arguments dovetail with the failure to ground some of the Court conclusions in substantial evidence. I think that the immigration judge's citation to a single snippet from the record that Mr. Zapata-Matute gave saying that he was not directly threatened, but then goes on to say, but they threatened to kill my entire family, and now my entire family has problems. I think that's — it's an entirely unreasonable reading of the record. I think that the I-985 application, the rest of his testimony and evidence submitted on his behalf command and compel the conclusion that he indeed was threatened, and that that's at the core of his claims for asylum and CAT. If there are not any further questions on these issues, I'll reserve the rest of my time for rebuttal. You've saved your time, and we'll hear from you again. Thank you. Thank you very much. Good morning. May it please the Court. Greg Mack, counsel for the Respondent at the Attorney General of the United States. The Board of Immigration Appeals would not recognize or otherwise be familiar with the particular social group that was proposed in Petitioner's Brief at pages 28 through 29. Judge Rosenbaum, your question is correct. Particular social group is the threshold issue in this case. Now that I understand what Petitioner's argument is, apparently the argument is there are errors with respect to past persecution and well-founded fear of future persecution, and those errors somehow impact the particular social group analysis, and therefore Petitioner gets to present an entirely new particular social group that the Board of Immigration Appeals and immigration judge never considered. I think as we've cited in our brief, they are distinct issues, and particular social group can be the dispositive issue as the Board of Immigration Appeals focuses here. We're keeping your office busy this week because we've got so many immigration cases, and it's very helpful to us to have you here. Just as a kind of a layperson in this area, it looks like to me there was clear ineffective assistance of counsel at the IJ stage of this proceeding, and, of course, Mr. Zapata Matute had different counsel than he does today. A point about the court. Well, you know, thank goodness we have people that are willing to help us, but, you know, his lawyer before the IJ proposed a particular social group that it had already been established would not be accepted by immigration authorities. I mean, does he have any recourse for that? The recourse that he has is to pursue a motion to reopen with the Board of Immigration Appeals. Okay, so that's helpful, but the 90-day deadline, I think, for the doing that is expired. So does he have any recourse now? If the Board of Immigration Appeals was inclined to deny the motion to reopen because it was timely, then he could come to this court with a petition for review challenging that determination. Okay, I mean, I don't know if you've ever heard the expression about immigration case. I've read this somewhere that it's, you know, people's lives are at stake. So it's almost like dealing with, you know, death penalty cases in a traffic court context because we have such a volume of them. And, of course, this is a, I mean, I worry about this young man because, you know, his uncle's already been killed after he was removed from the United States. So, you know, that seems like fairly good evidence that he is under threat, just, again, as a layperson. Well, as he stated in the record, Your Honor, he said he wasn't specifically threatened. I know, I know, but I mean, he's We don't know how this stuff works. I mean, I think we all know how it works, though. I mean, his whole family is camped outside with guns to protect the house because we all know the reality of the situation. So what can he do? I mean, you've said he can move to reopen if he gets denied because it's not timely, then he can appeal to us and that's it. And that's it. Yes, Your Honor. Let me ask you this. It occurred to me that maybe there was some evidence that this young man had been trafficked. There wasn't any evidence, and I think as we cited in our brief, the immigration judge was attentive to the fact that he was a 14-year-old child who presented himself to the United States. The immigration judge insisted that his mother find counsel, and the immigration judge asked or was interested in wondering whether he had been trafficked, and that was not followed up with by his counsel. Well, once again, you know, we've got this ineffective assistance of counsel issue. I mean, do your procedures allow him any recourse for that? Beyond the ineffective assistance of counsel claim and a motion to reopen that, again, would have to be timely, there is no recourse. He would have to, if the Board of Immigration Appeals denied that motion to reopen for ineffective assistance of counsel, again, he could come to this court with a petition for review. What about if there was evidence that he had been trafficked? Is there a process by which he could apply for a T visa at this stage? He could apply for a T visa or I believe also a U visa. And a U visa, you do not have to be in the United States, and it doesn't matter whether you have an order of removal. So that's a potential route. But as far as this route that is before the court, this went before an immigration judge and went before the Board of Immigration Appeals. And all these arguments were not made. I'm sorry, Your Honor? And these arguments were not made by his counsel, his former counsel. His former counsel. His former counsel agreed with the immigration judge, with the immigration judge, with a particular social group that was opposed. And then before the Board of Immigration Appeals, he repeated the same particular social group. Well, yeah. It just demonstrates incompetence, though. And it's not exhausted, so therefore, the court doesn't have jurisdiction to review the new particular social group that was presented in the petitioner's opening brief. I'm sorry, you're going to get tired of hearing from me. But I just had one more about the same question I asked your colleague about the CAT claim. As I understand those regulations, it can either be direct government action or government acquiescence, and the IJ only spoke to direct government action. So wasn't that a failure of reason, considering? The immigration judge points to the regulation and says the act has to be directed against the person in the offender's custody or physical control and also inflicted by or at the instigation or with the consent or acquiescence of either a public official or a person acting in official capacity. So the acquiescence part is the private actor part of that equation. But wasn't he just quoting the reg in that? He was quoting the reg, but that implicates the private actor in the sense that— But he didn't speak to private actors. Well, he's quoting the reg, and the reg says public official or acquiescence of a public official. But you'll agree with me that I can quote a reg and still not follow it, right? I don't know that I would agree with that, Your Honor. Oh, you're kidding. You can quote the reg and follow the law, which is the immigration judge's duty. And the immigration judge cites the regulation. The regulation refers to acquiescence. And then goes on to only talk about direct government action. He talks about acquiescence, and he also says the court— He doesn't talk about acquiescence. He cites the reg that talks about acquiescence. And the acquiescence is that a public official acquiescing in the act of a private individual. I know what it means. My point is that there was no reason, consideration to the possibility that there was government acquiescence to all this gang or cartel activity where this young man came from. And I want to be clear also. The government's brief doesn't talk about Cat at all in our replacement brief. I just want to be clear about that as well. I didn't understand you. I'm sorry. The government's brief doesn't talk about Cat at all. We had said Petitioner had waived. So I want to be clear about it. I'm speaking with the court's lead with respect to Cat, with respect to your questions. And I appreciate it. But the dispositive issues for the immigration judge was that there was no past torture, which is one of the elements with respect to Cat. There was the ability to internally relocate in Honduras. And the other dispositive issue on Cat for the immigration judge was that there was no gross human rights violation. So there's a panoply of factors that the immigration judge— By the government. Well, by the government. That's correct. But those are the dispositive issues for the immigration judge with respect to Cat. No past torture, ability to internally relocate, and no evidence— This idea about he could internally relocate contradicts his grandmother's statement, doesn't it? I mean, there's some statement in there that was not acknowledged about where either he or his grandmother addressed, you know, these people are looking for us everywhere in my country. Well, his grandmother says he was threatened. He was also moved from one location to his maternal grandparents' house. And then they got worried about him being there, right? After his— Those were the individuals out front. But he was able to internally relocate in Honduras, which is one of the findings the immigration judge made. And there's no substantial evidence to contradict that. And the immigration judge could accept his testimony over his grandmother's state because, again, his testimony was that he was not specifically threatened. So he faced no specific threat himself, or let me say he received no specific threat himself. Certainly, his family members had concerns. I mean, he's just a kid. But, okay. Thank you. If the Court has no further questions, we ask the Court to deny the petition for review. We—I hope you don't feel like I gave you a hard time. But I'm really interested in this case and— Oh, not at all. I've been doing this for 20 years. These are sad, tragic cases. And I think the immigration judge tried to do as much as he or she could. And the same particular social group was presented to the Board of Immigration Appeals. He didn't get much help from the prior counsel. And it was a counsel that he selected and he found. And the government—I mean, the government doesn't hire the attorneys for the individuals. I know, I know, I know, I know. But, you know, as you know from doing this for 20 years, people that are here and don't know our culture think, you know, well, any lawyer will do. And that's really not true, right? I can't add any more to that, Your Honor. Okay. Thank you. Well, thank you very much. Thank you. Thank you, Your Honor. Just a few points for rebuttal. Judge Martin, I think you're correct. This case may involve a circumstance of life or death as to whether Mr. Zapata Matute is deported or not. I think that is why this circuit has established a clear procedural rule in cases like Tan that where there's a failure to give reasoned consideration or to make adequate findings, the proper remedy is to vacate and remand so that those—so that the case can have further consideration. And this court can then therefore properly review the decision after it is complete. I think with respect to—one point with respect to the Catt claim in particular, I think, Judge Martin, I think you're correct. The evidence does compel the conclusion that relocation was not an option here. He attempted to relocate. The threats continued. And then his family paid a coyote to smuggle him 1,600 miles out of the country. I think that overwhelmingly compels the conclusion that relocation was not an option to avoid the persecution that Mr. Zapata Matute was faced with in this case. If there are no further questions, I would just conclude that this court has a—this court's clear precedent compels the vacator of the decisions below and granting Mr. Zapata Matute's petition. I know that you got drafted to represent this young man. And he clearly needed new counsel. And we, as a court, appreciate you stepping up to help us with this case and to help this young man. It was my pleasure. Thank you. Thank you.